WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Christopher,<br><br>    Plaintiff,<br><br>v.<br><br>RJM Acquisitions LLC,<br><br>    Defendant. | No. CV-13-02274-PHX-JAT<br><br>**ORDER** |

Before the Court are Defendant's Motion for Summary Judgment, or in the Alternative, Summary Adjudication, (Doc. 31), and Plaintiff's Motion for Summary Judgment, (Doc. 40). The Court now rules on the motions.

**I.   Background**

On November 28, 2011, Defendant purchased an account from Bookspan/Doubleday Entertainment LLC ("Bookspan"). (Defendant's Separate Statement of Undisputed Facts ("DSOF"), Doc. 32, at ¶ 1; Plaintiff's Controverting Statement of Facts ("PCSOF"), Doc. 37, at ¶ 1). The account was a Mystery Book Club account opened by someone by the name of Jennifer Christopher, with a balance of $97.36. (DSOF at ¶ 2). Plaintiff, also named Jennifer Christopher, never opened such an account and does not owe the debt, but, as explained below, received collection letters on the debt from Defendant. (PCSOF at ¶¶ 2, 15, 16; DRPCSOF at ¶ 15, 16)

Bookspan provided Defendant the following address for Jennifer Christopher: 800 E. Stewart St. Apt. 4, Willcox AZ 85643-1326 ("Willcox address"). (DSOF at ¶ 3;

PCSOF at ¶ 3). Defendant subsequently received a new address for Jennifer Christopher from TLO, a third party "skip trace" vendor that specializes in locating new addresses of individuals who move. The new address was 525 E. Sequoia Dr., Phoenix AZ 85024-1621 ("Phoenix address"). (DSOF at ¶ 4, 18; PCSOF at ¶ 4, 18).

On April 16, 2013, Defendant sent a collection letter addressed to Jennifer Christopher at the Phoenix address. (DSOF ¶ 5; PCSOF at ¶ 5, 12). In pertinent part, the letter informed the recipient of the following:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

(Doc. 1-1). Although Plaintiff received this letter, Defendant did not receive a response. (PCSOF at ¶¶ 11, 13; DSOF at ¶ 5, Defendant's Response to Plaintiff's Controverting Statement of Facts ("DRPCSOF"), Doc. 39, at ¶ 11).

On May 25, 2013, Defendant received another new address for Jennifer Christopher via Anchor Software, a company that provides address moves updates via what is known as the National Change of Address file. The new address was 1899 Reserve Blvd. Apt. 4, Gulf Breeze, FL, 32563-7040 ("Florida address"). (DSOF at ¶¶ 6; PCSOF at ¶¶ 6, 19; DRPCSOF at ¶ 19).

Pursuant to its policy, Defendant sent a collection letter addressed to Jennifer Christopher at the Florida address on June 11, 2013. (DSOF at ¶¶ 7, 8; PCSOF at ¶¶ 7, 8). Like the letter sent to the Phoenix address, this letter informed the recipient of the following:

>Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

(Doc. 1-2). Plaintiff received this letter, and on August 2, 2013 called Defendant and informed one of Defendant's representatives that she was not the owner of the debt. (DSOF at ¶ 9; PCSOF at ¶¶ 9, 13, 14). Defendant has not made any attempts to collect the debt from Plaintiff since that phone call. (DSOF at ¶ 10; PCSOF at ¶ 10).

Plaintiff brought this cause of action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Both parties moved for summary judgment. Oral argument was held on January 28, 2015.

## II. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A)&(B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

1 *Catrett*, 477 U.S. 317, 322 (1986).

2   Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. To be entitled to summary judgment, the movant must support its motion with evidence that would entitle it to a directed verdict at trial, *id.* (citing Fed. R. Civ. P. 50(a)); i.e., the party must show that "a reasonable jury would not have sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). The burden then shifts to the non-movant to establish the existence of material fact. *Celotex Corp.*, 477 U.S. at 323. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

## III.   Discussion

The FDCPA prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "Whether conduct violates [§ 1692e] ... requires an objective analysis that takes into account whether the 'least sophisticated debtor would likely be misled by a communication.'" *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (brackets in original) (*quoting Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)). This standard is designed to protect consumers of "below average sophistication or intelligence," and those who are "uninformed or naïve." *Id.* (quoting

*Duffy v. Landberg*, 215 F.3d 871, 874–75 (8th Cir.2000)). Although this is a low standard, even the hypothetical unsophisticated debtor is considered to retain a "basic level of understanding and willingness to read with care" and does not impose liability for "bizarre, "idiosyncratic," or "peculiar misinterpretations." *Id.* (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). Moreover, "immaterial statements, by definition, do not affect a consumer's ability to make intelligent decisions." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010) (citing *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757–58 (7th Cir. 2009)). Importantly, "a debt collector's liability under § 1692e of the FDCPA is an issue of law." *Gonzales*, 660 F.3d at 1061. The FDCPA is a strict liability statute, meaning violations need not be knowing or intentional for liability to attach. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175–76 (9th Cir. 2006).

Nevertheless, the FDCPA provides a "'narrow' bona fide error defense," under which a debt collector is not liable for violations of the FDCPA if it can prove, by a preponderance of the evidence, that "(1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011); 15 U.S.C. § 1692k(c).

Plaintiff seeks damages for violations of two subsections of § 1692e. First, Plaintiff claims that Defendant violated § 1692e(2)(A) by falsely stating that Plaintiff owed the Mystery Book Club debt. Second, Plaintiff claims that Defendant violated § 1692e(10) by sending two letters to Plaintiff, each of which represented that Plaintiff could dispute the debt within thirty days.[1] The Court will address each of these claims separately.

---

[1] Plaintiff also claims that Defendant violated § 1692e(10) by falsely stating to Plaintiff that Plaintiff owed the Mystery Book Club debt, which is the same conduct it alleges violated § 1692e(2)(A). Because the standards are essentially the same, the Court will analyze this conduct only under § 1692e(2)(A).

- 5 -

**A.    § 1692e(2)(A)**

**1.    Violation**

§ 1692e(2)(A) prohibits "[t]he false representation of the character, amount, or legal status of any debt." Plaintiff claims that Defendant made a false representation by sending her letters claiming that she owed the Mystery Book Club debt, which was untrue. Defendant, on the other hand, asserts that receiving a collection letter for a debt not owed by the recipient would not confuse the unsophisticated debtor.

There is no dispute that Defendant sent two letters to Plaintiff indicating that Plaintiff owed the Mystery Book Club debt, or that Plaintiff does not, in fact, owe that debt. There is therefore no issue of material fact, and the only question regarding Defendant's alleged violation § 1692e(2)(A) is whether sending a collection letter to someone who does not owe the debt would confuse or mislead the unsophisticated debtor. As noted above, this is an issue of law. *Gonzales*, 660 F.3d at 1061.

The Ninth Circuit has not considered whether sending a collection letter to a non-debtor constitutes a violation of the FDCPA; however, most, if not all, courts to consider this issue have held that "an attempt to collect a debt from a non-debtor constitutes a 'false representation' as to the character or status of the debt." *See Stuart v. AR Res., Inc.*, No. CIV.A. 10-3520, 2011 WL 904167, at *4 (E.D. Pa. Mar. 16, 2011) (citing *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 392 (D. Del. 1991); *Dutton v. Wolhar*, 809 F.Supp. 1130, 1137 (D. Del. 1992)); *Velazquez v. NCO Fin. Sys., Inc.*, No. CIV.A. 2:11-CV-00263, 2011 WL 2135633, at *5 (E.D. Pa. May 31, 2011); *Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120, 1131 (W.D. Wis. 2004); *Owens v. Howe*, No. 1:04-CV-152, 2004 WL 6070565, at *11 (N.D. Ind. Nov. 8, 2004). The rationale behind this conclusion is that an unsophisticated consumer could be "'shaken' by a debt collector's inaccurate representation of a debt, even if the consumer knew she did not owe what the collector said that she did." *Crafton v. Law Firm of Jonathan B. Levine*, 957 F. Supp. 2d 992, 997 (E.D. Wis. 2013).

The Court agrees with the litany of cases holding that sending a collection letter to

someone who does not owe a debt constitutes a "false representation of the character, amount, or legal status of any debt" under the FDCPA, 15 U.S.C § 1692e(2)(A). While many—perhaps most—consumers would not be confused by a collection letter alleging a debt they did not owe, the law requires that debt collectors tailor their practices to protect even the most uninformed, naïve, unsophisticated consumer. Especially when faced with the intimidating nature of the debt collection process, such a consumer could question his or her own recollection of events and wonder whether he or she does, in fact, owe the debt.

The cases upon which Defendant relies to show that it did not violate § 16923(2)(A) are distinguishable. In *Wetzel*, an unreported case decided by a magistrate judge in the District of Oregon, the court stated, in dicta,[2] that the defendant-debt collector did not violate the FDCPA for several reasons. *Wetzel v. AFNI, Inc.*, No. 10-6159-TC, 2011 WL 6122963, at *6 (D. Or. Oct. 20, 2011) *report and recommendation adopted*, No. CIV. 10-6159-TC, 2011 WL 6122957 (D. Or. Dec. 8, 2011). First, the Court found that the debt collector's allegedly deceptive statements could only be misconstrued using a "bizarre, idiosyncratic, or peculiar misinterpretation." *Id.* The collection letter had stated that "this debt has been acquired by our agency for collections," and that plaintiff argued that this language would evoke images of the television show Bewitched in the mind of the unsophisticated debtor. *Id.* The Court rightly concluded that this "bizarre" misinterpretation of the debt collector's statement was "a stretch." *Id.* Second, the court in *Wetzel* found that the debt collector's statement that "[w]e may report information about your account to credit bureaus" was not improper, despite the plaintiff's assertion that the threat "overshadowed" the legally required notices in the collection letter. *Id.* The court reasoned that the debt collector's language was clear and plaintiff himself testified that he understood why the debt

---

[2] The court's decision in *Wetzel* was based upon a holding that the bona fide error defense, discussed *infra*, entitled the debt collector to summary judgment. *Wetzel v. AFNI, Inc.*, No. 10-6159-TC, 2011 WL 6122963, at *6 (D. Or. Oct. 20, 2011) *report and recommendation adopted*, No. CIV. 10-6159-TC, 2011 WL 6122957 (D. Or. Dec. 8, 2011)

- 7 -

collector used that language. *Id.*

Here, however, Plaintiff suggests no bizarre interpretation such as the one in *Wetzel*. Plaintiff also makes no argument that any threats in Defendant's collection letter "overshadowed" the legally required notices. She simply asserts that, when faced with collection efforts, an unsophisticated debtor could be confused and shaken in the belief that he or she does not owe the debt. For these reasons, the decision in *Wetzel* is unhelpful here.

Defendant also cites the Ninth Circuit's holding in *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010) that courts are "not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." That case dealt with a collection letter that accurately represented the total amount owed by the recipient, but inaccurately represented what portions of the total amount were from interest and finance charges. *Id.* at 1033. The court held that these "technical falsehoods" were immaterial because they "did not undermine Donohue's ability to intelligently choose her action concerning her debt." *Id.* at 1034. The Court reasoned that even if the debt collector had accurately described the breakdown of the total amount owed, "we can conceive of no action Donohue could have taken that was not already available to her on the basis of the information [provided]." *Id.*

There is a substantial difference, however, between the technical breakdown of the total amount owed and the identity of the debtor. While the debt collector's misstatement in *Donahue* may not have had any effect on plaintiff's circumstances, the same cannot be said of Defendant's misrepresentation here. Had the debt collector in *Donahue* correctly stated the nature of the debt, the plaintiff in that case would have still owed the debt and would be faced with the same decision regarding how to proceed. In contrast, had Defendant in this case correctly stated the nature of the debt—i.e., that it did not belong to Plaintiff—then Plaintiff would not have been forced to make a choice regarding the debt to begin with. In short, a misrepresentation that a debt belongs to someone, unlike a

misrepresentation about the breakdown of the total amount of a debt, is material. *Donahue*, therefore, does not apply.

In sum, Defendant sent two letters to Plaintiff asserting that Plaintiff owed a debt which Plaintiff did not owe. This is a material misrepresentation that could confuse or mislead an unsophisticated debtor. Plaintiff has therefore shown that Defendant violated § 1692e(2)(A) of the FDCPA.

### 2. The Bona Fide Error Defense

Defendant argues that even if it violated § 1692e(2)(A), it is absolved from liability by the FDCPA's "bona fide error" defense. *See* 15 U.S.C. § 1692k(c). As stated above, under the bona fide error defense, a debt collector must prove, by a preponderance of the evidence, that "(1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough, LLC*, 637 F.3d at 948; 15 U.S.C. § 1692k(c).

#### a. Intent

The starting point for proving the bona fide error defense is proving that the violation was unintentional. 15 U.S.C.k(c). In the context of defending a misrepresentation, this often means proving the debt collector was unaware that its representation was false. *See Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 996 (7th Cir. 2003). When making a showing that a misrepresentation was unintentional, debt collectors are entitled to argue that they reasonably relied on information provided by the original creditor. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1174 (9th Cir. 2006).

Here, the undisputed evidence shows that Defendant obtained Plaintiff's Phoenix and Florida addresses from third party vendors that specialized in tracking down specific individuals. Importantly, those vendors used the information the original creditor gave to Defendant to search for places the actual debtor had moved; they did *not* simply search for every addressed associated with someone by the name of Jennifer Christopher, as Plaintiff suggests. Therefore, Defendant's misrepresentation that Plaintiff owed the

Mystery Book Club debt was unintentional, since Defendant had good reason to believe that Plaintiff was the same Jennifer Christopher who owed the Mystery Book Club debt.[3]

### b.  Bona Fide

Even unintentional violations are only excused by the FDCPA if they were a result of a "bona fide error." 15 U.S.C. § 1692k(c); *see also McCollough*, 637 F.3d at 948. This means that only mistakes made in good faith—that is, "sincere, genuine" mistakes made "without fraud or deceit"—absolve debt collectors from liability. *See* Black's Law Dictionary (9th ed. 2009) (defining "bona fide" as "1. Made in good faith; without fraud or deceit. 2. Sincere; genuine."); *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009) ("As used in the Act 'bona fide' means that the error resulting in a violation was "made in good faith; a genuine mistake, as opposed to a contrived mistake."). Again, debt collectors may reasonably rely on information they obtain from the creditor. *Clark*, 460 F.3d at 1174.

In *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 949 (9th Cir. 2011), the Ninth Circuit explained that debt collectors could not prevail on a bona fide error defense after burying their heads in the sand when making decisions on how to pursue collection efforts. In that case, the debt collector—a law firm—filed suit against a debtor who subsequently raised a statute of limitations defense. When the debt collector inquired of the creditor, the creditor incorrectly informed the debt collector that a partial payment had been made only a few years before, meaning the statute of limitations did not bar the suit. The creditor later discovered its mistake and informed the debt collector, but the debt collector continued to prosecute multiple suits against the debtor. The debtor sued the debt collector, and on appeal, the Ninth Circuit held that, in the face of multiple

---

[3] The Court recognizes that the Ninth Circuit has indicated that the bona fide error defense extends only to "clerical errors." *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir. 1982). This rule, however, was later rejected by the Supreme Court in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*. In that case, the Supreme Court explicitly stated that the bona fide error defense extends to "clerical or factual mistakes." 559 U.S. 573, 587 (2010); *see also Jerman*, 559 U.S. at 608 (Scalia, J., concurring) ("[T]he Court specifically interprets the . . . language in the FDCPA as providing a defense not only for clerical errors, but also for factual errors.").

- 10 -

statute of limitations defenses raised by the debtor and corrected information provided by the creditor, the debt collector could not show that its mistake was made in good faith.

As examples of the types of mistakes that might be considered to be made in good faith, the Ninth Circuit in *McCollough* cited two cases from sister circuits. First, the Seventh Circuit held that a mistake as to the bankrupt status of a debtor was reasonable where the debt collector and creditor-client had an "'understanding' that [the] client would not forward accounts in bankruptcy," the "error was made in 0.01% of cases," and the debt collector "immediately ceased collection efforts upon notice from debtor of the mistake." *McCollough*, 637 F.3d at 949 (citing *Hyman v. Tate*, 362 F.3d 965, 967–68 (7th Cir. 2004)). Second, the Sixth Circuit held that a debt collector was justified in relying on information from a creditor where "the debt collector's referral form, completed and signed by the creditor-client, included specific instructions to claim only amounts legally due and owing." *Id.* (quoting *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir.1992)) (quotation marks and brackets omitted).

In contrast with the debt collector in *McCollough*, Defendant here has shown that its mistaken belief that Plaintiff owed the Mystery Book Club debt was in good faith. Defendant sent a total of only three letters in relation to the Jennifer Christopher account. The first letter was sent to the original address provided by the original creditor, and the other two were sent to addresses where the third party vendors believed the actual debtor had moved. In other words, Defendant reasonably relied on the information given it by the original creditor and used this information to the best of its ability to try and track down the actual debtor. Unlike the debt collectors in *McCollough*, Defendant did not ignore any information provided by the original creditor, nor did it willfully avoid discovering any new information that might lead it to the actual debtor's true address. The Court therefore finds that Defendant's misrepresentation to Plaintiff that she owned the Mystery Book Club debt was the result of a bona fide error.

### c. Procedures Reasonably Adapted to Avoid Error

In addition to proving that the misrepresentation was unintentional and in good

faith, debt collectors must also show that they maintained "procedures reasonably adapted to avoid such error." 15 U.S.C. § 1692k(c). "The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008).

Defendant here has shown that its procedures are reasonably adapted to avoid sending collection letters to non-debtors. Rather than taking a "shotgun approach" by sending collection letters to every Jennifer Christopher that Defendant could locate, Defendant used vendors that specialized in obtaining new addresses for specific people. As a result of these policies, Defendant sent only three letters in relation to the Jennifer Christopher account, two of which were received by the same person (Plaintiff). The fact that Defendant's vendors successfully located Plaintiff's Florida address based on her previous address shows that the process was designed to find a specific person, which in turn avoids sending letters to non-debtors. The Court finds that these procedures satisfy the FDCPA's requirement that the debt collector's procedures be reasonably adapted to avoid the error which caused a violation of the statute. 15 U.S.C. § 1692k(c).

Therefore, because Defendant has shown through undisputed evidence that its violation of 15 U.S.C. § 1692e(a)(2) was committed unintentionally, in good faith, and despite the maintenance of procedures reasonably adapted to avoid error, Defendant is entitled to summary judgment on Count I of Plaintiff's Complaint.

**B.     § 1692e(10)**

    **1.     Violation**

§ 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Plaintiff argues that Defendant violated § 1692e(10) by representing in the first letter that Plaintiff had thirty days from receipt of that letter to dispute the debt, and then representing the same thing in the second letter. Because the FDCPA only provides thirty days from the original notice for an alleged debtor to dispute the debt, Plaintiff argues that sending the second letter with the second thirty day notice was "false and

- 12 -

misleading" because the letters left the impression that Plaintiff has "more rights than the law actually provides." Defendant argues that sending notices cannot violate the FDCPA because the second notice actually gave Plaintiff "more rights and protection" than the statute provides.

It is undisputed that Defendant sent two letters to Plaintiff and that both letters contained the same language regarding the thirty days Plaintiff had to dispute the debt. Therefore, the only question regarding Defendant's alleged violation of § 1692e(10) is whether sending two letters, each representing that the alleged debtor has thirty days from receipt of the letters to dispute the debt, would confuse or mislead the unsophisticated debtor. This is a question of law. *Gonzalez,* 660 F.3d at 1061.

The problem with Plaintiff's argument is that the notice in the collection letters did not purport to notify Plaintiff of her legal rights; rather, the letter stated what Defendant would do if Plaintiff disputed (or did not dispute) the debt within thirty days. In other words, the letters did not mention what rights "the law actually provides" as Plaintiff suggests, but what rights Defendant was privately extending to Plaintiff. The law does not prohibit this, nor does the law require that debt collectors notify debtors of their "legal right" to dispute the debt. In fact, the notices in the letters almost perfectly mirror the language in the statute. In short, the letters could not misrepresent Plaintiff's legal rights without first making some sort of representation about legal rights.  Defendant made no such representation, and therefore Plaintiff's argument fails in this respect.

The Court finds, however, that an unsophisticated debtor could be confused by receiving two nearly identical letters that, using identical language, state that he or she has thirty days to dispute the debt. The unsophisticated debtor might have a lot of questions when he or she receives the second letter: "Did the debt collector already 'assume this debt is valid,' since I did not respond to the first letter? If so, then why did the debt collector send me a second notice, saying that I have another thirty days? Does this new letter restart the thirty days mentioned in the first letter, or does the second letter act as an extension of the thirty days afforded by the first letter? If I don't respond to this

second letter, will the debt collector actually assume that I owe this money, or will it send me yet another letter?" Many people would no doubt be perceptive enough to deduce that the debt collector sent the second letter after it obtained the debtor's new address, and conclude that despite the first letter, the debt collector would not assume the debt is valid until thirty days after the second letter was received. But the unsophisticated debtor standard is very low, and the most naïve, uninformed person could conceivably be confused as to his or her options after receiving the second letter. The Court therefore finds that Defendant violated § 1692e(10) by sending two letters to the same person, each representing that Plaintiff had thirty days from receipt of the letter to dispute the debt.

### 2. The Bona Fide Error Defense

Defendant's bona fide error defense fails because it cannot show that its conduct—sending two letters to the same person indicating two different deadlines for the debtor to dispute the debt—was unintentional. To the contrary, Defendant's policies *required* it to send multiple letters with identical language regarding the dispute deadline to a debtor if they obtain information that the debtor might have moved. Defendant followed those policies in the present case, intentionally sending two letters to Plaintiff that, together, could confuse the unsophisticated debtor. Defendant cannot argue, therefore, that its misconduct was the result of any clerical error or mistake of fact.

Therefore, because Plaintiff has shown through undisputed evidence that Defendant violated 15 U.S.C. § 1692e(10) by sending two letters that set conflicting deadlines for the debtor to dispute the debt, and because Defendant has failed to show that its misconduct was unintentional, Plaintiff is entitled to summary judgment on Count II of her Complaint.[4]

### 3. Damages

Neither party briefed the issue of damages. At oral argument, the Court inquired as

---

[4] Plaintiff also argues that Defendant violated § 1692e(10) when it erroneously sent the collection letters to Plaintiff, who does not owe the debt. This is the same conduct the Court analyzed in relation to Count I of the Complaint, and for the same reasons explained *supra*, the Court finds that Defendant is entitled to summary judgment for that conduct.

to damages, and counsel for Plaintiff indicated that Plaintiff seeks only statutory damages. Defendant declined to address the issue of damages during oral argument.

The FDCPA requires the Court to award statutory damages for violations of the Act. 15 U.S.C. § 1692k(a)(2)(A). The amount of statutory damages the Court may award is within the Court's discretion, but statutory damages may not exceed $1,000 per violation. *Id.* The Court therefore awards $1,000 statutory damages for Defendant's violation of § 1692e(10).

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment, or in the Alternative, Summary Adjudication, (Doc. 31), is **GRANTED IN PART** and **DENIED IN PART**. The Clerk of the Court is ordered to enter judgment in favor of Defendant on Count I of Plaintiff's Complaint.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (Doc. 40), is **GRANTED IN PART** and **DENIED IN PART**. The Clerk of the Court is ordered to enter judgment in favor of Plaintiff in the amount of $1,000 on Count II of Plaintiff's Complaint.

Dated this 3rd day of February, 2015.

James A. Teilborg
Senior United States District Judge